IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| PATRICK J. ENG, individually and PATRICK J. ENG, MATTHEW B. WOODS, DOUGLAS F. PUGH, THAD MULHOLLAND, and JONATHAN D. MCQUILKIN, d/b/a ENG AND WOODS | ) ) ) ) ) ) | Case No. 08-4103-CV-C-NKL |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| CUMMINGS, MCCLOREY, DAVIS AND ACHO, P.L.C. | ) ) ) | |
| Defendant. | ) | |

O R D E R

Plaintiffs Patrick J. Eng, Matthew B. Woods, Douglas F. Pugh, Thad Mulholland, and Jonathan D. McQuilkin, doing business as Eng and Woods, Attorneys at Law , and Patrick J. Eng individually (collectively "Plaintiffs") brought this declaratory judgment action seeking a declaration that Defendant Cummings, McClorey, Davis and Acho, P.L.C., is not entitled to fees allegedly owed to it pursuant to an agreement to divide attorneys' fees. Defendant has counterclaimed against Plaintiffs for breach of contract, fraud and misrepresentation, unjust enrichment, and bad faith breach of contract.

Pending before the Court are the parties' cross motions for summary judgment. [Docs. ## 32 and 36]. Plaintiffs move for summary judgment on their declaratory judgment claim that they are prohibited from paying a "1/3 referral fee" to Defendant because any such

1

referral fee would violate Missouri Rule of Professional Conduct 4-1.5(e). For the same reason they seek summary judgment on Defendant's counterclaim for breach of contract. Defendant's cross-motion for summary judgment seeks a "finding that Plaintiffs . . . are liable for, and Defendant . . . is entitled to the agreed upon fee." At oral argument on their cross motions for summary judgment, the Court asked the parties to supplement their motions to specifically address the Defendant's claims for fraud, misrepresentation, bad faith contract and unjust enrichment. Both parties have now been given a full and fair opportunity to demonstrate whether summary judgment should be granted or denied on those claims as well. Also pending before the Court is Plaintiff's Motion to Strike Defendant's Expert Report and Prohibit Expert Testimony [Doc. # 39].

For the reasons stated below, Plaintiffs' motion for summary judgment is granted and Defendant's motion is denied. The Court also finds that judgment must be entered in favor of Plaintiffs on Defendant's counterclaims for fraud, misrepresentation, unjust enrichment and bad faith breach of contract. Plaintiffs' motion to strike Defendant's expert report and prohibit expert testimony is denied as moot.

**I.     Background**

    **A.     Undisputed Facts[1]**

---

[1] For purposes of this order, facts are undisputed where they have been agreed to by the parties or where a fact was not specifically disputed by a party. Under Local Rule 56.1, all statements of material fact set out in a motion for summary judgment not specifically controverted by the non-movant are deemed admitted.

Plaintiffs – Eng and his partners at Eng & Woods – are Missouri residents and are lawyers practicing and licensed in the State of Missouri. They do business as Eng and Woods, Attorneys at Law ("Eng & Woods"). Defendant Cummings, Mclorey, Davis & Acho, P.L.C. ("CMDA") is a Michigan Professional Liability Company. Attorney James Acho is an associate with CMDA. James Acho is licensed to practice law in Michigan but not Missouri.

Ernie Fazio, a resident of California, and a client of Acho's, called Acho in 2006 and informed him that Beverly Townsend had been killed in an automobile accident on November 8, 2006 near Springfield, Missouri. Fazio told Acho that he had a close relationship with Mike Richina – also a resident of California and Beverly Townsend's son – and asked Acho to take care of him

The next day, Acho spoke with Richina, and Richina told Acho that he wanted Acho to handle the matter. Richina agreed that either Acho and CMDA would handle the lawsuit in Missouri or that they would locate counsel in Missouri to handle the claims on behalf of himself and his sister, Khemya MitRahina. Acho researched attorneys in Missouri, and then conducted a search for local counsel. Plaintiff Patrick J. Eng was recommended to Acho and Acho thereafter gave Eng's name to Richina.

On November 18, 2006, Eng & Woods entered into a Contingent Fee Contract with Mike Richina to prosecute claims for the wrongful death of his mother Beverly Townsend. The contract provided that Richina would pay Eng & Woods "[o]ne-third (1/3) of all sums

3

recovered," in addition to costs. The contract appears to have been signed by Richina and Eng & Woods attorney Matthew Woods on November 18, 2006. *See* Ex. 1 to Pls.' Ex. A

That same day, Eng & Woods entered into another Contingent Fee Contract with Khemya MitRahina – the sister of Mike Richina, daughter of Beverly Townsend, and California resident – to prosecute claims for the wrongful death of her mother. Like the contract with Richina, this one provided that MitRahina would pay Eng & Woods one-third of all sums recovered in addition to costs, and was signed by MitRahina and Woods on November 18, 2006. *See* Ex. 2 to Pls.' Ex. A.

On December 1, 2006, Acho sent a letter to Eng purporting to memorialize an agreement that they had made. The letter stated:

> This letter will serve as a follow-up to our phone conversations of the past two weeks. First, please accept my sincere thanks for agreeing to take on this tragic case. Anytime individuals lose their lives, a case takes on more significance and it makes us fight just that much harder. Your client, Mike [Richina], was referred to me by his uncle, Ernie Fazio, who has been my client for several years. I in turn contacted you via the recommendation of my father, Ronald Acho, who holds you in high regard.
>
> As we agreed on the phone, this firm will retain a one-third (33 1/3%) consulting fee against any recovery Eng & Woods garners on behalf of Mike [Richina], or any other party the firm represents as a result of the action. We understand, of course, that the fee is after your actual costs. I will work with you on the case as liaison, keeping in constant communication with Ernie Fazio, and when necessary, Mike [Richina]. I will also be on call at any time for you or your partner, should you need any assistance.
>
> If you have any questions or concerns, or if this is not an accurate recital of our understanding, please contact me at once. I look forward to working with you, and eventually bringing this to a successful resolution.

4

Def.'s Exhibit B. Eng received but did not respond to the Acho's December 1, 2006 letter.

The same day, Acho sent a letter to Mike Richina. This letter stated:

> I don't have the words to tell you how sorry I am that we had to meet under these circumstances. Your uncle Ernie has become like an uncle to me as well, and that's why I jumped right on this matter, made it priority #1. I want you to know you're in good hands-Pat Eng is considered a "super lawyer" and held in high regard by my father who has known him for years. Pat's firm will take good care of you and your sister, and hopefully, your sister who apparently is considering retaining separate counsel.
>
> I understand you are sort of the point man for the family in all this. I just wanted to confirm our conversations, and that Eng & Woods will retain 1/3 contingency fee on any recovery for you/your siblings, and that my firm retains a 1/3 referral agreement with Eng & Woods-meaning, whatever they recover as their own fee, we get 1/3 of that-it doesn't come out of your end. Also, you have given me permission to communicate about your case with Ernie, who will act as sort of a conduit. If any of this is not accurate, please let me know at once. My letter to Pat Eng is attached.
>
> Hopefully, the recovery for you and your siblings will be large and while it won't make up for your loss, it may help ease the sting. Please feel free to call me at any time, day or night, Mike. I plan on staying involved in this case and see it through. My prayers are with you and your sisters during this most difficult time. God bless.

Def.'s Ex. C. Acho's letter to Eng was attached to the letter that Acho sent to Richina.

There is no evidence that Acho ever communicated directly with MitRahina or had a written agreement with her. There is no corresponding letter to MitRahina in the record and Acho never spoke or had direct communications with MitRahina.[2] There is no evidence in the record that Acho or CMDA had signed employment agreements with either Richina

---

[2] Defendant argues that Acho communicated with MitRahina indirectly, through Fazio or Richina, but admits that "Acho never had any direct communication with MitRahina." Defs.' Sugg. in Opp. at 2.

5

or MitRahina akin to the contingent fee contracts the clients entered into with Eng & Woods. As part of this litigation, Richina has signed an affidavit in which he states that he agreed that Acho and his firm CMDA would either handle the lawsuit in Missouri or locate competent legal counsel in Missouri to handle the wrongful death case on behalf of him and his sister. (Richina Aff. ¶ 3). However, there is no evidence in the record that Richina ever signed a written agreement with Acho.[3]

---

[3]Defendant states that "Acho believes he had a signed representation agreement with" both Richina and MitRahina. *See* Defs.' Sugg. in Opp. at 3. Acho stated that he believed Richina signed a representation agreement with him, and that MitRahina "may have" signed a representation agreement with him. *Id.* at 6; (Acho Depo. at 17). Acho also stated in his deposition that he was not certain as to whether Richina returned a signed employment agreement with him. (Acho Depo. at 10). He stated that "[t]o be honest with you, I'm not 100 percent certain . . . I've looked for one. I do know that there is a letter confirming the understanding between us, which in my mind would suffice as a writing. Because of the circumstances, I'm not certain if he returned a signed employment agreement or not . . . I believe he did, but you'd have to ask him." *Id.* Acho stated that he had searched for such an agreement in his files but had not located one. *Id.* With respect to MitRahina, Acho stated that it was "possibly correct" that he had no employment agreement with MitRahina, and that although he had searched his files for such an agreement, he had not found one. *Id.* at 10–11. Further, as stated above, Defendants obtained the affidavit of Richina –the person Acho stated in his deposition Plaintiffs would "have to ask" about the alleged representation agreement– in support of their motion for summary judgment; nowhere in that affidavit does Richina state that he had signed any agreement for CMDA or Acho to represent him. (Richina Aff.).

 Defendants have produced no evidence of these agreements other than Mr. Acho's uncertain testimony that he believed the agreements existed or may have existed. This is insufficient to create an issue of fact for trial. *Nat'l Bank of Commerce of El Dorado, Arkansas v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999) (Plaintiffs could not create genuine issue of material fact out of uncertain testimony because they "must do more than simply show that there is some metaphysical doubt as to the material facts") (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). *See generally Bloom v. Metro Heart Group of St. Louis,* Inc., 440 F.3d 1025, 1028-29 (8th Cir. 2006) (speculation insufficient to defeat summary judgment)(citing *Moody v. St. Charles County*, 23 F.3d 1410, 1412 (8th Cir. 1994)).

6

Case 2:08-cv-04103-NKL   Document 64   Filed 06/02/09   Page 6 of 16

Eng & Woods prosecuted the claims of Richina and MitRahina for the wrongful death of their mother in *Barieri, et al. v. Ozark Motor Lines, Inc. et al.*, Case No. 1064771, in the Circuit Court of Greene County, Missouri, along with co-counsel at Dollar, Burns and Becker, L.C. and the Benson Law Firm, who represented Lorene Barbieri, another of Beverly Townsend's children. Matthew Woods acted as lead counsel for Richina and MitRahina. On December 20, 2007, the case settled for a total of $1,875,000.00, with $482,589.68 going to Barbieri and $364,520.00 each to Richina and MitRahina after deduction of attorneys' fees. The Court directed Richina and MitRahina to pay $375,000 in attorneys' fees to Woods, or $187,500 per client. Both Richina and MitRahina consented to the settlement and the payment of attorneys' fees to Eng & Woods. The attorneys fees approved by the Greene County Circuit Court were then paid to Eng & Woods and the net settlement proceeds were paid to Richina and MitRahina.

Acho never entered his appearance in the case, participated in drafting or filing pleadings, attended depositions, participated in discovery, or participated in either of the two mediations that were held in the course of the litigation. Acho never spoke with Matthew Woods, any attorney representing co-Plaintiff Barbieri, or any attorney representing any defendant in the case prior to the settlement of the case. He paid none of the expenses of the litigation.

Acho did have some involvement in the case after forwarding the case to Eng & Woods. Acho twice received oral updates from Eng on the status of the case, and requested

7

but did not receive written status reports. Acho relayed information to Fazio and Richina while the case was being prosecuted. Acho gave assurances to Richina throughout the case that it was being appropriately handled, and explained to him how cases proceeded through the legal system. Acho received multiple calls from Fazio during the litigation seeking information about the status of the case.

Acho learned in January 2008 that the case had been resolved, and called Richina to determine whether he had received his recovery. Richina informed Acho that both he and MitRahina had been paid pursuant to the settlement. Acho then contacted Eng seeking payment of 1/3 of the attorneys' fees paid to Woods. Woods sent Acho a check in the amount of $18,562.50 "in consideration for [Richina's] contact information[.]" Woods determined the amount of the check based upon 10% of the amount of the contingency fee related to Mike Richina's case. Woods stated that he sent the check to Acho to thank him for his help in obtaining the case. Acho and Eng had a heated conversation after Acho received the check, wherein Acho argued that the check was not for the agreed-upon amount. During this conversation, Eng told Acho he would stop payment on the check unless Acho agreed to accept it. Acho agreed to accept the check, but expected another check for the difference owed him under the alleged agreement. Eng stopped payment on the check.

### B. Disputed Facts

Plaintiffs assert that neither Eng nor Matt Woods ever discussed any division of fees with Acho. In contrast, Defendants claim that Eng agreed to a 1/3 division of fees during a

phone conversation with Acho before the referral was made to Eng. Defendants also assert that Eng contacted Acho on December 5, 2006 confirming receipt of the December 1, 2006 letter. Plaintiffs deny that this occurred. Finally, Defendants argue that in a telephone conversation in January 2008, Eng acknowledged that there had been a fee arrangement, though he was not sure of the exact amount Acho would receive.

Defendants contend that Acho agreed to bring the file to Eng & Woods, to act as a liaison, keep in contact with both Fazio and Richina, and to be available as needed anytime Eng or his partner Woods needed assistance. Plaintiffs dispute this and deny that Acho agreed to act as liaison or to keep in contact or be available.

**II.     Discussion**

   **A.     Standard of Review**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). If the moving party satisfies this burden, Rule 56(e) requires the nonmoving party to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine

9

issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

### B. Enforceability of the Alleged Fee-Splitting Agreement

While there is a significant dispute about whether any fee splitting agreement between Eng and Acho existed and the amount of work performed by Acho, it is not necessary to resolve those disputes because even if the agreement alleged by Defendants existed, it would be unenforceable under Missouri law.[4]

"[A]n agreement to share attorney fees that does not comply with Rule 4-1.5(e) [of Missouri's Rules of Professional Conduct] is unenforceable." *Neilson v. McCloskey*, 186 S.W.3d 285, 287 (Mo. Ct. App. 2005); *see also Law Offices of Gary Green, P.C. v. Morrisey*, 210 S.W.3d 421, 425 (Mo. Ct. App. 2006); *Risjord v. Lewis*, 987 S.W.2d 403, 405 (Mo. Ct. App. 1999). The version of Rule 4-1.5(e) that was in effect when Plaintiffs and Defendant allegedly entered into a fee-splitting agreement provided:[5]

---

[4]Defendant had initially argued that Missouri law did not apply to the alleged agreement, but at oral argument admitted that Missouri law applied.

[5]Rule 4-1.5(e) was amended in March 2007, effective July 1, 2007. The amended rule does not require a written agreement with the client where the division of fees is based upon each lawyer assuming joint responsibility for the representation; it provides instead that in all cases

10

(e) A division of fee between lawyers who are not in the same firm may be made only if:
    (1) the division is in proportion to the services performed by each lawyer or, by written agreement with the client, each lawyer assumes joint responsibility for the representation;

    (2) the client is advised of and does not object to the participation of all the lawyers involved; and
    (3) the total fee is reasonable.

   1. Rule 4-1.5(e)(1)

Under the first element above, any agreement to divide attorney fees must either (a) divide fees in proportion to the services to be performed by each lawyer, or (b) if fees are to be divided in any other way, the client's written agreement must be obtained and each lawyer assumes joint responsibility for the representation. Here, the alleged agreement meets neither of these requirements with respect to either client.

First, while Acho did perform some legal services, including maintaining client contact and client counseling, the purported agreement that Defendant seeks to enforce provides Defendant with 33 1/3% of any fees collected regardless of how much communication with the clients was necessary, and regardless of how much advice Eng or Woods would need. Moreover, while client contact and client counseling are important legal

---

where fees are divided there must be agreement with the client which is confirmed in writing. In its briefing on the parties' cross motions, Defendant quoted from and applied the amended rule and the comments thereto. However, at oral argument Defendant conceded that the version of the rule in place at the time of the alleged agreement, rather than the amended rule, applied to this case. Further, Defendant gave no reason in its briefing why the Court should apply law which did not exist at the time the parties allegedly entered into the agreement at issue in this case. The Court has therefore applied the Rule in effect at the time the alleged agreement was allegedly made.

services, it is clear that this agreement called for Eng & Woods to perform far in excess of two thirds of the work in prosecuting this wrongful death claim. No reasonable jury could find this was an agreement to divide fees in proportion to the amount of work performed by each attorney.[6]

Second, Defendant has produced no written agreement with either Richina or MitRahina regarding the division of fees. At oral argument, Defendant argued that the letter Acho sent to Mike Richina on December 1, 2006, and Richina's failure to respond to that letter, satisfied Rule 4-1.5(e)'s requirement of a "written agreement" with him. The letter purports to confirm earlier communications between Acho and Richina regarding the splitting of fees between Eng & Woods and Acho's firm, but it is not itself a "written agreement" with Richina. Missouri courts would not regard Richina's failure to respond in the face of the December 1, 2006, letter from Acho as the formation of a contract or agreement. *See Guidry v. Charter Communications, Inc.*, 269 S.W.3d 520, 528 (Mo. Ct. App. 2008) ("Silence generally cannot be translated into acceptance.") (citing *Karsch v. Carr*, 807 S.W.2d 96, 99 (Mo. Ct. App. 1990)).

Furthermore, as Plaintiffs asserted at oral argument, Rule 4-1.5(e) was amended on March 1, 2007 to remove the requirement of a written agreement with the client and to

---

[6] Defendant at oral argument relied exclusively on its argument that there was a written agreement between Acho, Richina and MitRahina . They did not argue that the agreement was an agreement to divide the fee in proportion to the work performed by the parties. However, it was unclear from the briefing whether Defendant was relying on that provision of the Rule and therefore the Court has addressed it to avoid later confusion.

12

replace it with a requirement that the client's agreement to the association of the fee-splitting lawyers be "confirmed in writing." If the version of Rule 4-1.5(e) in effect in 2006 had allowed for fee-splitting agreements where an attorney merely sent his or her client a letter confirming the client's agreement to the fee-splitting, the amendment in 2007 to specifically allow for this procedure would not have been necessary. Thus, the requirement in Rule 4-1.5(e)(1) for a written agreement has not been satisfied.

2. Rule 4-1.5(e)(2)

It also appears that, with respect to MitRahina, the agreement fails to satisfy the second part of Rule 4-1.5(e), that the client be advised of and not object to the participation of all lawyers involved. While Defendant sent a letter to Richina confirming the arrangement, there is no indication that any similar notice was sent to MitRahina. Further, while Defendant claims that Acho communicated with MitRahina indirectly, through Fazio or Richina, it admits that "Acho never had any direct communication with MitRahina." Defs.' Sugg. in Opp. at 2. There appears to be no evidence that MitRahina was advised of and did not object to the participation of all attorneys in this case.

3. The Alleged Agreement Would be Unenforceable

Because the alleged agreement did not comply with Rule 4-1.5(e), it is unenforceable, and Defendants are not entitled to 33 1/3% of the attorneys' fees awarded to Plaintiffs as a result of their settlement of Richina's and MitRahina's claims. Therefore, Plaintiffs' motion

13

for summary judgment must be granted and Defendant's cross motion for summary judgment must be denied.

C. **Defendants' Counterclaims**

At oral argument, the Court invited the parties to supplement their motions for summary judgment with argument and evidence regarding whether Defendant's additional counterclaims for fraud and misrepresentation, unjust enrichment, and bad faith breach of contract could survive a finding by the Court that the alleged agreement, even if made, would be unenforceable for failure to comply with Rule 4-1.5(e). Both parties submitted supplemental briefs addressing this issue.

Because the alleged fee agreement would be unenforceable under Missouri law, Defendant's counterclaims for fraud and misrepresentation, unjust enrichment, and bad faith breach of contract also fail as a matter of law. Missouri courts have held that where parties have entered into agreements to split fees that do not comply with Rule 4-1.5(e), no cause of action lies for either breach of contract or for other claims seeking to recover on the basis of the unenforceable agreements. *See Law Offices of Gary Green*, 210 S.W.3d at 423–26 (affirming trial court's dismissal of claims for breach of contract, conversion, unjust enrichment and declaratory judgment was appropriate where plaintiff had not plead compliance with Rule 4-1.5(e)); *Londoff v. Vuylsteke*, 996 S.W.2d 553, 554–59 (Mo. Ct. App. 1999) (affirming trial court's dismissal of plaintiff's claims for breach of contract, unjust enrichment, and conversion against a defendant where the agreement did not comply

14

with Rule 4-1.5(e)); *Neilson*, 186 S.W.3d at 287–88 (affirming trial court's dismissal of plaintiff's petition alleging "several tort theories" arising out of an unenforceable fee-splitting agreement); *see also Deja Vu of Missouri, Inc. v. Talayna's Laclede's Landing, Inc.*, 34 S.W.3d 245, 250 (Mo. Ct. App. 2000) (affirming trial court's entry of summary judgment on claims for breach of contract, fraud, negligent misrepresentation, unjust enrichment, and rescission where the claims were based upon an agreement that was void as against public policy, because such agreements are "unenforceable both in law and equity."). Here, the alleged agreement would be unenforceable under Missouri law for failure to comply with Rule 4-1.5(e). Therefore, Defendant's counterclaims for fraud and misrepresentation, unjust enrichment, bad faith breach of contract, as well as its counterclaim for breach of contract, fail as a matter of law. Plaintiffs are entitled to summary judgment on all claims.

**III.    Plaintiffs' Motion to Strike Expert Testimony**

Also pending before the Court is Plaintiffs' Motion to Strike Defendant's Expert Report and Prohibit Expert Testimony [Doc. # 39]. Because the Court grants Plaintiffs' motion for summary judgment, this motion is denied as moot.

## IV. Conclusion

Accordingly, it is hereby

ORDERED that Plaintiffs' Motion for Summary Judgment [Doc. # 32] is GRANTED with respect to Plaintiffs' declaratory judgment claim and each of Defendant's counterclaims; it is further

ORDERED that Defendant's Motion for Summary Judgment [Doc. # 36] is DENIED; it is further

ORDERED that Plaintiffs' Motion to Strike Defendant's Expert Report and Prohibit Expert Testimony [Doc. # 39] is DENIED as moot.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated: June 2, 2009  
Jefferson City, Missouri